**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MISSISSIPPI STATE CONFERENCE NAACP, *et al.*, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 08-2140 (JR) |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*, | : : : | |
| Defendants. | : | |

### MEMORANDUM

Plaintiffs are two organizations (the Mississippi State Conference NAACP and the Gulf Coast Fair Housing Center) and four individuals (Dorothy McClendon, Zelda Williams, Rangisma Dilworth, and Pamela Landry). They have sued the Department of Housing and Urban Development and its Secretary,[1] alleging that HUD unlawfully approved Mississippi's diversion of $570 million in Hurricane Katrina-related federal relief funds that were supposed to go to low-income housing, but instead were allocated to a high-end port expansion project. Plaintiffs seek declaratory and injunctive relief prohibiting HUD from releasing the funds. Because plaintiffs lack Article III standing, however, their complaint must be dismissed.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Shaun Donovan is substituted as a defendant in his official capacity.

**Background**

Hurricane Katrina ravaged the Gulf Coast, hitting the residents of Mississippi and Louisiana especially hard.  Tens of thousands of homes were destroyed, leaving renters and homeowners displaced and in need of aid.  In December 2005, Congress appropriated $11.5 billion in disaster relief funds for five Gulf Coast states, with just over $5 billion allocated to Mississippi.  *See* Compl. ¶ 10.  In an August 2006 supplemental appropriation, Congress provided an additional $5.2 billion for the five affected states, allocating $423 million to Mississippi.  *Id*.  These funds were to be administered by HUD in accordance with the Housing and Community Development Act of 1974, 42 U.S.C. § 5301 *et seq*. (the "HCDA").  More specifically, the funds were part of the Community Development Block Grant ("CDBG") program; Mississippi was required to develop a plan for the proposed use of the funds and to submit that proposal for HUD's review and approval.

The HCDA identifies twenty-five broad categories of activities for which grantees may use the funds.  It also requires that 70 percent of the funds be used to benefit low-and-moderate-income persons.  42 U.S.C. §§ 5301-5305.  Under HCDA-as-usual, the grantee (here, Mississippi) designs the program within established federal constraints, and HUD disburses the money – as long as the plan is "not plainly inconsistent with the

[HCDA]." *See* 24 C.F.R. § 570.480(c). In its two post-Katrina appropriations, however, Congress authorized HUD to approve plans that used as little as 50 percent of the funds to benefit low-and-moderate-income persons, unless HUD made a finding of "compelling need."

On February 13, 2006, HUD published a Federal Register notice, indicating that it would, as directed by Congress, waive numerous requirements (or "certifications") of the CDBG program in order to give grantees "greater flexibility to carry out recovery activities." 71 Fed. Reg. 7666, 7667 (Feb. 13, 2006). HUD still required state grant recipients to certify that grant funds would "affirmatively further fair housing," that the funds would be used for disaster relief, and that 50 percent of the funds would be used for activities principally benefitting low-to-moderate-income persons. *Id.* at 7671.

Mississippi then submitted partial action plans, making the required alternative certifications. The plans included a Homeowners Assistance Program providing one-time grant payments of up to $150,000 to eligible homeowners who suffered flood damage (but not wind damage) to their homes. *See* Compl. ¶¶ 64-66. That plan was subsequently expanded to provide $100,000 payments to other low-and-moderate income homeowners who suffered flood damage but were not eligible in the first phase. *See* Compl. ¶¶ 58, 72, 127. HUD approved these plans.

When Mississippi discovered that it had overestimated the number of homeowners who would be eligible for its Homeowners Assistance Program, it proposed to divert $570 million in "excess funds" to the Port of Gulfport Restoration Project.  The stated purpose of that diversion was to restore public infrastructure destroyed by Hurricane Katrina and to help protect against future damage.  To meet the HCDA requirement of aid to low-and-moderate income persons, Mississippi projected that the project would create more than 5,000 new jobs, and that those jobs would be available first to applicants with low-to-moderate incomes.  Moreover, the Port's tenants would be required to sign a Memorandum of Agreement making the jobs available to low-to-moderate income workers.  HUD approved the diversion of funds on the conditioned certifications, with former HUD Secretary Alphonso Jackson noting that he had "little discretion" in approving the project.  *See* Compl. ¶¶104-108.

The individual plaintiffs here were not eligible for Mississippi's Homeowner's Assistance Program, because they: 1) were not homeowners (i.e., were renters); or 2) did not live in eligible counties; or 3) did not insure their residences pre-Katrina; or 4) had residences that suffered wind damage, instead of flood damage.  *See* Compl. ¶¶ 24-29.  They, along with organizational plaintiffs, allege that HUD should not have approved the diversion of funds, because Mississippi still lacks

affordable housing, and because CDBG funds should be put to more important use.

## Analysis

The Complaint asserts three claims.  First, plaintiffs seek what they call a "Declaration of Obligations" that the Secretary has a non-waivable statutory duty to review and assess Mississippi's proposal to divert the $570 million.  Second, the Secretary's "acceptance" of Mississippi's plan is alleged to be arbitrary and capricious, under the rubric of the Administrative Procedure Act, 5 U.S.C. § 701-706.  And third, the Secretary's acceptance is alleged to be contrary to law because the Port Expansion Project would not in fact further fair housing or principally benefit low-to-moderate income persons.

The Secretary moves to dismiss for lack of standing. Article III standing requires a plaintiff to show: 1) injury in fact, 2) that is fairly traceable to defendant's conduct (causation); and 3) that a favorable decision on the merits likely will redress that injury.  *See Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000).  Here, the organizational and individual plaintiffs have failed to satisfy any of those constitutional requirements.

The plaintiffs' claim of injury is not of injury to themselves.  It is that Mississippi has not addressed "the unmet housing needs of Hurricane Katrina's poorest and neediest

victims." Pls.' Opp'n, 25.  The plaintiffs have not alleged or offered to show that HUD's diversion of excess funds to the Port Expansion Project has injured or would injure them.

The individual plaintiffs were not eligible for the Homeowners Assistance Program in the first place.  The organizational plaintiffs neither allege nor offer to show direct injury – nor could they, as the procedural requirements of the HCDA were not designed to protect organizational interests.  *See Ctr for Law & Educ. v Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (organizational plaintiff lacked standing because regulatory procedures were not designed for their protection).  Nor do the organizational plaintiffs show particularized injury to their members: the Gulf Coast Fair Housing Center does not claim to have members at all, and the Mississippi NAACP does not allege that any of its members were eligible for the Homeowners Assistance Program.

The lack of standing of both individual and organizational plaintiffs is even more evident when the required analysis turns to causation and redressability.  On plaintiffs' own allegations, the lack of affordable housing is really traceable, not to the Secretary, but to the program design and eligibility requirements established by the State of Mississippi.  For example, plaintiffs allege

> Mississippi has failed to address the housing
> crisis adequately and has neglected the dire

> and persistent need for affordable rental housing.  Rather, Mississippi's programs deemphasized LMI [low-to-moderate income] housing needs and used restrictive eligibility standards to significantly reduce the number of homeowners who could receive grant awards.

Compl. ¶ 13.  Mississippi is not a defendant in this action, nor indeed do plaintiffs challenge the design of Mississippi's Homeowners Assistance Program.  Plaintiffs might argue (but have not) that an injunction prohibiting HUD from releasing the funds for use in the Port Expansion project would force Mississippi to make better use of the money.  But the possibility that Mississippi might redesign its affordable housing programs and expand eligibility to include the plaintiffs will not suffice to show redressability.  *See Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1277 (D.C. Cir. 2007).

## Conclusion

Plaintiffs' principled objection to the diversion of $570 million to a Port Expansion Project when post-Katrina housing needs in Mississippi are still unmet may indeed be well-founded as a policy matter.  Their lack of standing, however, deprives the court of subject matter jurisdiction.


                                    JAMES ROBERTSON
                                    United States District Judge